UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JAMES MITCHELL,

        Plaintiff,

                                        08 CV 5068 (SJ) (JO)

   -against-                            **MEMORANDUM &
                                                                ORDER**

NEW YORK CITY TRANSIT AUTHORITY,

        Defendant.
-------------------------------------------------------X
A P P E A R A N C E S

JOHN F. MCHUGH
6 Water Street
New York, NY 10004
Attorney for Plaintiff

OFFICE OF THE GENERAL COUNSEL
New York City Transit Authority
130 Livingston Street
Brooklyn, NY 11201
By:    Baimusa Kamara
Attorney for Defendant

**JOHNSON, Senior District Judge:**

      James Mitchell ("Plaintiff" or "Mitchell") filed suit against his employer, the New York City Transit Authority ("Defendant" or "TA"), alleging discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112, <u>et seq</u>.

("ADA"). Presently before the Court is Defendant's motion for summary judgment. For the following reasons, the motion is GRANTED.

## BACKGROUND

Plaintiff has been an employee of the TA since 1986, and has worked under the Conductor title since 1996. As a Conductor, Plaintiff was assigned to the Department of Subways, Division of Rapid Transit Operating Authority, which is responsible for the operation of the New York City subway trains. The Transport Workers Union, Local 100 ("TWU" or "Local 100") represents all employees under the Conductor title for the purposes of collective bargaining and resolution of disputes related to the collective bargaining agreement ("CBA") between the TA and Local 100.

### A. Policies and Benefits Under the Collective Bargaining Agreement

As a CBA benefit, most union represented employees may select their "work location, tour of duty, job preference, [and] train run …" every six months. (Def. 56.1 ¶¶ 17-18.) Job preference options for employees in the Conductor title include revenue train service (i.e., operation of a train), platform duty, handswitching, and fare collection, amongst other options. Between 1997 and 2009, Plaintiff chose revenue train service for various subway lines as his job preference under the Conductor title.

In addition to job preference options, the CBA also provides for 12 paid sick days per year. To complement the 12 paid sick days, TA employees are also eligible for supplemental sick leave benefits at 60% pay depending on the employee's length of employment in the TA. Employees become eligible for supplemental sick leave when they have exhausted their regular paid sick days and then are absent for nine or more consecutive work days due to illness.

In order to receive both paid and supplemental sick leave benefits, employees must submit a sick form that details the reason for their absence within three days of their return to work. Absences greater than two days require sick forms certified by medical proof (usually in the form of a doctor's note). Employees were also notified that failure to submit a sick form within three days of that employee's return to work would result in loss of pay for the period in question and possibly also disciplinary charges. This information is also stated explicitly on the sick form.

If an employee fails to submit a sick form five times, the CBA requires that employee's supervisor to counsel the employee and instruct him to improve his sick leave record. After a sixth unsubstantiated absence, the employee is placed on the sick leave control list, which requires that employee to provide medical documentation for all subsequent sick leave absences. Employees found to be in violation of the CBA sick leave policies are subject to denial of sick leave, disciplinary action, and possible termination.

Once on the sick leave control list, employees are reviewed every six months to assess their attendance. Employees with two or less absences due to illness are removed from the sick leave control list. Employees who have two or more absences due to illness remain on the sick leave control list and may be subject to disciplinary action.

**B. Plaintiff's Medical History and Plaintiff's History at the TA**

Since 1999, Plaintiff has suffered from diverticulitis, a chronic medical condition that causes gastrointestinal problems and occasionally renders Plaintiff unable to control his bowels. Diverticulitis is aggravated by tension, and Dr. Basileo, Plaintiff's physician, notes that he is "more sensitive than most to workplace irritations." (Basileo Decl. ¶ 11.) As a result of Plaintiff's diverticulitis, he has frequently missed work.

Between January 2, 1999 and October 29, 2009, the TA paid plaintiff his regular sick leave benefits totaling $86,735.88. Additionally, Plaintiff applied for supplemental sick leave 14 times, and the TA approved Plaintiff's applications in 10 out of the 14 instances. Between 1998 and 2008, Plaintiff was absent from work anywhere from 33 to 164 work days per year (of approximately 212 workdays in each year).

Plaintiff has been placed on the sick leave control list three times, in 1998, 2000, and 2006, for failing to comply with the sick leave procedures outlined in the CBA. Defendant has brought numerous Disciplinary Action Notifications

("DANs") against Plaintiff, which were also largely related to violations of the TA's sick leave procedures. Plaintiff has nine pending DANs awaiting resolution via arbitration. Excepting two instances, all of those DANs arose out of Plaintiff's violations of sick leave procedures.

### C. Instances in Which Plaintiff Stopped Trains to Seek Out Restroom

Since 1999, Plaintiff has suffered from four sudden onsets of illness that led him to stop a train mid-route to seek out a restroom. In 2000, a flare-up of Plaintiff's diverticulitis forced Plaintiff to stop a train at City Hall Station in order to seek out a restroom. Following that stop, Superintendent Vanessa Pettifore instructed Train Service Supervisor ("TSS") Arriaga to board Plaintiff's train to investigate the cause of the delay. That investigation resulted in a verbal altercation between Plaintiff and TSS Arriaga and a subsequent DAN against Plaintiff for insubordination. The Tripartite Arbitration Board ultimately suspended Plaintiff for 30 days related to that DAN.

### D. Procedural History

On March 27, 2007, perceiving the above events to constitute a pattern of discrimination, Plaintiff filed an administrative complaint against Defendant with the New York State Division of Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging specific acts of discrimination in violation of the New York State Human Rights Law, Title VII of

the Civil Rights Act of 1964, and the ADA. Following an investigation, the SDHR determined that there was "no probable cause to believe that [Defendant] has engaged in or is engaging in" discriminatory employment practices and that there was "insufficient evidence" to support Plaintiff's allegation of retaliation. The EEOC issued Plaintiff a right to sue letter on September 19, 2008.

Plaintiff filed this action on December 16, 2008 alleging violation of the ADA and its New York State equivalent and subsequently amended the Complaint on October 14, 2009, retaining the ADA claims but dropping state law claims. Specifically, Plaintiff alleges that, since December 1999, Defendant has systematically harassed him because Defendant perceives that Plaintiff's diverticulitis renders him disabled. Defendant moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law." Call Ctr. Tech., Inc. v. Grand Adventures Tour & Travel Pub. Corp., 635 F.3d 48, 51 (2d Cir. 2011); see also Fed. R. Civ. P. 56. "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (citation omitted). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant has the burden of establishing that there exists no genuine issue of material fact.

See Fed. R. Civ. P. 56(c); Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010).

"The district court's task on a summary judgment motion—even in a nonjury case—is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011). Further, "the district court may not properly consider the record in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence . . . ." In re Dana Corp., 574 F.3d 129, 152 (2d Cir. 2009).

Instead, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008) (citing Anderson, 477 U.S. at 255). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Nationwide Mut. Ins. Co. v. Mortensen, 606 F.3d 22, 28 (2d Cir. 2010).

## DISCUSSION

The ADA dictates that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to … [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination claims under the ADA "are subject to the burden-shifting analysis originally established by the

Supreme Court in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973)." McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009). Therefore, (1) the "plaintiff must establish a prima facie case; [(2)] the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and [(3)] the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." Sista v. CDC IXIS N. Amer., Inc., 445 F.3d 161, 169 (2d Cir. 2006) (citing Heyman v. Queens Vill. Comm. For Mental Health for Jamaica Cmty. Adolescent Program, 198 F.3d 68, 72 (2d Cir. 1999)).

To establish a prima facie case of disability discrimination, Plaintiff must prove that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." Capobianoco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005) (citing Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). If a plaintiff fails to establish a prima facie case of discrimination under the ADA, the claim cannot survive summary judgment. Reeves v. Johnson Controls World Servs., 140 F.3d 144, 153 (2d Cir. 1998); McDonald v. City of New York, 2011 WL 1331504, at *19 (E.D.N.Y. Apr. 6, 2011).

Similarly, to state a claim of hostile work environment, Plaintiff must demonstrate that he suffered conduct so objectively severe and pervasive that a reasonable person would find it hostile or abusive and that this conduct occurred because of Plaintiff's disability.[1]  Bonura v. Sears Roebuck & Co., 62 Fed. Appx. 399, 400 (2d Cir. 2003).  Naturally, under either theory, a determination that Plaintiff is disabled under the ADA (or regarded as disabled) is key.

To determine whether a plaintiff meets the definition of a disability under the ADA, the Supreme Court has established a three-part test.  Bragdon v. Abbott, 524 U.S. 624, 631 (1998).  First, the Court must consider whether the plaintiff suffers from a physical impairment.  Id.  Second, the Court must "identify the life activity" in question and "determine whether it constitutes a major life activity under the ADA."  Id.  Finally, the Court must determine whether the physical impairment substantially limits the major life activity in question.  Id.

*I. Whether Plaintiff Suffers From a Physical Impairment*

The EEOC defines a "physical or mental impairment" as:

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive…"

---

[1] For the purpose of this motion, the Court assumes arguendo that the ADA provides a cause of action for hostile work environment. See Bonura, 62 Fed. Appx. at 400 n.2 (noting that the Second Circuit has yet to rule on the issue).

29 C.F.R. § 1630.2(h)(1). In the case at bar, it is clear that Plaintiff's diverticulitis qualifies as a physical impairment, as it is a condition that affects his digestive system. This has been confirmed by Plaintiff's own physician and the TA's medical department.

II.     *Major Life Activities Affected*

Under the ADA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping … and working." 42 U.S.C. § 12102(2)(A). In the present case, Plaintiff has met this factor because both working, see <u>Potenza v. City of New York</u>, 95 Fed. Appx. 390, 391 (2d Cir. 2004), and waste elimination, see <u>Simmons v. New York City Transit Auth.</u>, 2008 WL 2788755, at *3 n.4 (E.D.N.Y. July 17, 2008), are major life activities.

III.    *Degree of Limitation*

To constitute a disability under the ADA, a condition must <u>substantially limit</u> a major life activity. And, where the activity in question is working, "the term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). There is no evidence that Plaintiff

is generally unable to carry out duties falling under the "conductor" title, and certainly no evidence that Plaintiff is unable to work on a global scale.

Insofar as Plaintiff argues that he is substantially limited in the major life activity of waste removal, his argument is unpersuasive and unsupported by the record. In the very July 26, 2002 medical examination to which Plaintiff draws the Court's attention, the TA's examiner concludes that Plaintiff has a well-documented history of Irritable Bowel Syndrome and "on some occasions even with treatment will have fecal urgency," but nevertheless declares him qualified and fit for permanent full duty. This evidence is consistent with the fact that, since 1999, Plaintiff has only needed to stop a train mid-route on four occasions. It is also significant because Plaintiff's own treating physician reported that instances of fecal urgency should be few and far between, and in any event, be preceded by sufficient notice (in the form abdominal pain hours before a flare-up) to prevent his boarding a train unaware of an impending gastroenterological catastrophe. Therefore, Plaintiff has not demonstrated that his diverticulitis "substantially affects" a major life activity, and he has failed as a matter of law to establish this element. See, e.g., Shannon v. Verizon New York, Inc., 2007 WL 1135307, at *4 (N.D.N.Y. Apr. 13, 2007) (intermittent urinary incontinence cannot support finding of substantial impairment of the activity of waste removal); see also Guardino v. Village of Scarsdale Police Dept., 2011 WL 4000999, at *4 (S.D.N.Y. Sept. 6, 2011) (dismissing claim where Plaintiff proffered insufficient evidence of substantial interference with life activity of waste elimination).

IV.     *Perceived Disability*

Even if Plaintiff is not disabled, he is still afforded the protections of the ADA, insofar as he demonstrates that the TA perceives him to be disabled and discriminated against him on that false belief. See Hilton v. Wright, 2012 WL 752546, at *6 (2d Cir. Mar. 9, 2012). The employer's perception need not be congruent with the ADA, as it is not necessary to show that the employer identified a major life activity that was substantially limited by the employee's condition. Id. ("[A]n individual meets the requirement of 'being regarded as having such an impairment' if the individual shows that an action. . . was taken because of an actual or perceived impairment, <u>whether or not</u> that impairment limits <u>or is believed to limit</u> a major life activity.") (quoting H.R. Rep. No. 110–730, pt. 1, at 14 (2008) (emphasis added)).

However, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." Reeves, 140 F.3d at 153. While it is clear that Plaintiff's numerous absences and sick forms made the TA aware of Plaintiff's physical impairment, there is no evidence that this in turn led the TA to regard Plaintiff as disabled. Indeed, as noted, <u>supra</u>, the TA's physician determined that Plaintiff's condition did not warrant a change in his full-time duty status. Nor is there any evidence that the TA pursued disciplinary action against Plaintiff for any reason other than his violations of the sick leave policies, violations that he does not dispute are covered

by the CBA. As a result, Plaintiff's claim of discrimination under the ADA must be dismissed, as he can prove neither that the numerous disciplinary actions against him were rooted in an actual or perceived disability nor that the TA's explanation for those actions are a pretext for illegal discrimination. So too, must his claim of hostile work environment fail, as it also relies on a finding that he is disabled, or at least perceived as such.

The Court has considered Plaintiff's remaining arguments and finds them to be without merit.

## **CONCLUSION**

For all the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment for Defendant and to close this case.

**SO ORDERED.**

Dated: March 29, 2011 　　　　　　　　　_____/s_____
　　　　Brooklyn, NY 　　　　　　　　　　STERLING JOHNSON, JR.
　　　　　　　　　　　　　　　　　　　　Senior United States District Judge